# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| **BRENTLY DORSEY,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**THE CITY OF TOPEKA, KANSAS,** )<br>) Case No. _____<br>)<br>and )<br>)<br>**CITY OF TOPEKA FIRE DEPARTMENT,** )<br>) REQUEST FOR JURY TRIAL<br>)<br>)<br>Defendants. ) | |

## **COMPLAINT**

COMES NOW, Plaintiff Brently Dorsey (hereinafter, "Plaintiff") by and through his undersigned counsel and for his Complaint against Defendant City of Topeka, Kansas (hereinafter, "Defendant City") and Defendant City of Topeka Fire Department (hereinafter "Defendant Fire Department") (hereinafter, collectively, "Defendants") alleges and states as follows:

### **Parties and Jurisdiction**

1. Plaintiff is a citizen of the United States, residing in Topeka, Shawnee County, Kansas and, at all times pertinent to this Complaint for Damages, was an "employee" within the meaning of the Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*. ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), as amended, and the Family and Medical Leave Act, 29 U.S.C. § 2611 et seq. ("FMLA").

2. Defendant City is a political subdivision organized under the laws of the State of Kansas. At all times pertinent to this Complaint for Damages, Defendant City was a "person" within the meaning of Title VII and the ADA.

3. Defendant Fire Department is a political subdivision organized under the laws of the State of Kansas. At all times pertinent to this Complaint for Damages, Defendant Fire Department was a "person" within the meaning of Title VII and the ADA.

4. This is an employment discrimination and retaliation lawsuit based upon and arising under Title VII and an action for retaliation for Plaintiff exercising his FMLA rights based upon and arising under the FMLA.

5. All of the unlawful acts and practices set forth below were committed within the city of Topeka, Shawnee County, Kansas. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

**Administrative Procedure and Procedural Posture**

6. On or about June 9, 2022, Plaintiff timely filed a Charge of Discrimination against the City of Topeka with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of Plaintiff's disability and/or Defendants' perception that Plaintiff is disabled, discrimination on the basis of Plaintiff's race, discrimination on the basis of Plaintiff's color, and unlawful retaliation. (A copy of the Charge of Discrimination is attached hereto as Exhibit A and incorporated herein by reference as if fully set forth herein).

7. On or about June 19, 2022, Plaintiff timely filed a Charge of Discrimination against the City of Topeka Fire Department with the EEOC alleging discrimination on the basis of Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, discrimination on the basis of Plaintiff's race, discrimination on the basis of Plaintiff's color, and unlawful

retaliation. (A copy of the Charge of Discrimination is attached hereto as Exhibit B and incorporated herein by reference as if fully set forth herein).

8. On or about June 20, 2023, the United States Department of Justice ("DOJ") issued to Plaintiff four (4) Notices of Right to Sue Defendants. (A copy of each Notice is attached hereto as Exhibits C through F and are incorporated herein by reference as if fully set forth herein).

9. This action has been filed within ninety (90) days of Plaintiff's receipt of each such Notice.

10. The aforesaid Charges of Discrimination provided the EEOC/DOJ sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the EEOC/DOJ investigation of Plaintiff' claims and the involved parties, which could reasonably be expected to have grown out of the Charge of Discrimination.

11. Through the filing of Plaintiff's Charge of Discrimination, Defendant was afforded notice of Plaintiff's claims and the opportunity to participate in voluntary compliance.

12. Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## General Allegations Common to All Counts

13. Plaintiff is African American.

14. Plaintiff has leukemia, a medical condition.

15. Leukemia substantially limits Plaintiff's ability to engage in major life activities, including caring for himself and working.

16. Leukemia substantially limits Plaintiff's major bodily functions, including, breathing, caring for himself and it causes him pain.

17. Plaintiff began working for Defendants in the Topeka Fire Department on or about December 19, 1994.

18. Plaintiff held the rank of Captain from August of 2015 through May of 2022, when his employment ended.

19. During Plaintiff's time working for Defendants, he witnessed a pattern of African American employees being treated less favorably than Caucasian employees and being promoted less often than Caucasian employees.

20. Plaintiff first applied for the position of Fire Inspector sometime between 2003 and 2005.

21. There were two applicants at that time, Plaintiff and a female candidate.

22. Instead of promoting Plaintiff (or the female candidate), the job was opened back up because "there weren't enough applicants" according to the administration.

23. In 2014, Plaintiff applied for the position of Fire Marshal.

24. Plaintiff was not hired for the position despite having supervisory experience and, instead, it went to a Caucasian employee without any supervisory experience with the Topeka Fire Department.

25. On or about April of 2004, Plaintiff began having health problems, including debilitating neck pain.

26. In January of 2018 Plaintiff's health problems became much worse and Plaintiff notified Defendant of these issues.

27. Plaintiff was on sick leave from January of 2018 through March of 2018.

28. Plaintiff was then on light duty from April 2018 through September 2018.

29. In or about January of 2018, Plaintiff applied for two inspector positions.

30. Plaintiff interviewed for the positions during the time he was out on sick leave.

4

31. Plaintiff was denied both promotions.

32. Two individuals with less seniority than Plaintiff were hired instead.

33. In or around August of 2018, Plaintiff was officially diagnosed with leukemia.

34. In or around 2018, Plaintiff began taking intermittent FMLA leave and took this leave until his employment ended in May of 2022.

35. Plaintiff was again put onto light duty beginning in October of 2021 due to issues with his medical condition, including shortness of breath.

36. Plaintiff was supposed to be taken off of light duty by Defendants on June 4, 2022, when his light duty expired.

37. Plaintiff was still having shortness of breath, which would have made it difficult for him to respond to a fire.

38. Due to his medical condition, Plaintiff attempted to apply for a position that would be less physically demanding on his body so that he could continue working for Defendants.

39. Plaintiff intended to keep working for Defendants until at least the age of 60, which was ten more years.

40. Additionally, before Plaintiff went on light duty, he requested to be able to "ride the car" in November of 2020, but this was denied.

41. "Riding the car" is where Defendants allow non-probationary Captains within Defendant Fire Department to ride in Battalion Chief positions in their absence.

42. The process to be eligible to "ride the car" was to make the request via an email notification to your supervisor by November 30th for the following year.

43. When Plaintiff emailed his supervisor and put in his request to "ride the car," he received a phone call within days from the Interim Operations Chief at the time, stating that he

did not meet the requirements to "ride the car" because he did not have the Incident Safety Officer class.

44. Plaintiff was told that because of this, he could not "ride the car."

45. However, in January or February of 2022, while on light duty, Plaintiff was riding in the Battalion 3 vehicle with a Caucasian Captain acting as a Battalion Chief for the day.

46. He asked that captain if he had taken the Incident Safety Course and he said he had not.

47. Plaintiff then asked him if he was told that he had to have the class to be eligible to "ride the car" and he said no.

48. Plaintiff was subjected to different standards for "riding the car" than other Caucasian employees and those who did not have a disability.

49. In March of 2022, four Division Chief positions opened.

50. Plaintiff was qualified for and applied for two of the positions, Fire Marshal and Chief of Administration.

51. One of the requirements for the Fire Marshal position was that applicants must have held the rank of Captain with Defendant for two years.

52. There were no caveats to the requirement, and it was stated twice in the position requirements document.

53. Despite clearly listing these requirements, an individual who is Caucasian, who had never held the rank of Captain with the Topeka Fire Department, was hired for the position.

54. The individual hired as Fire Marshall had approximately six (6) fewer years of seniority than Plaintiff did.

55. The individual hired as Fire Marshall had never held a supervisory position with the Defendants, while Plaintiff had seventeen (17) years of supervisory experience.

56. According to page thirty-five of the Union Contract between the International Association of Firefighters Local 83 and the Defendants, "the city recognizes the principle that seniority consideration is giving the employee that has the most years of service in his/her job a greater consideration than another employee with less investment."

57. Plaintiff also applied for the Chief of Administration position.

58. Plaintiff was not hired for that position.

59. The individual hired for the position was a Caucasian employee who did not even apply for the position.

60. The interview board that the Defendants used to make hiring decisions included former Kansas City, Kansas Fire Department Chief, John Paul Jones.

61. Jones had been previously accused of racism and making racist statements in a jury trial in April of 2021, and that jury trial resulted in a jury award against KCK of more than 2.4 million dollars.

62. Plaintiff was notified on April 18, 2022, that he would not be hired for either of the positions for which he applied, and for which was qualified (Fire Marshall and Chief of Administration).

63. Upon information and belief, Plaintiff was not hired these positions, and two individuals—one less qualified individual and one individual who did not even apply for the position—did receive the positions, because of Plaintiff's race and/or disability.

64. Plaintiff's Medical condition was so debilitating that Plaintiff had to be on light duty up until the time his employment ended.

65. Upon information and belief, Defendants prevented Plaintiff from being promoted to force him out of the Fire Department due to his race and/or his medical condition.

66. Because Plaintiff was prevented from being promoted, because he was not accommodated, because his light duty was ending and because Plaintiff felt he could no longer do his current job due to his medical condition, he had no choice but to put in for his retirement effective May 20, 2022.

67. At least one other African American employee has also complained of being unfairly disciplined and not promoted due to his race.

68. Upon information and belief, Plaintiff was discriminated against and constructively discharged because of his disability and/or perceived disability and/or because of his race.

69. Due to the failure to accommodate and/or transfer Plaintiff into another position, Plaintiff was constructively discharged.

## COUNT I – DISPARATE TREATMENT BASED ON RACE IN VIOLATION OF TITLE VII

70. Plaintiff incorporates the allegations contained in the above-stated paragraphs as if fully set forth herein.

71. During Plaintiff's employment with Defendants, Plaintiff was subjected to different terms and conditions of employment, based on his race, African American, by Defendants.

72. During Plaintiff's employment with Defendants, Plaintiff was subjected to an ongoing practice and/or pattern of discrimination/disparate treatment based on his race, African American, by Defendants.

73. Plaintiff was subjected to different work requirements than other similarly situated Caucasian employees in regard to the terms and conditions of his employment.

74. Plaintiff was subjected to different requirements for receiving a promotion than other similarly situated Caucasian employees.

75. Plaintiff's race, African American, was a motivating factor in Defendants' decision not to promote Plaintiff.

76. Plaintiff's race, African American, was a motivating factor in Defendants' decision to constructively discharge Plaintiff.

77. Defendants' actions and/or omissions constitute a pattern or practice of discriminatory behavior.

78. All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

79. Defendants' actions constitute unlawful employment discrimination against Plaintiff in violation of Title VII, as alleged herein.

80. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants, jointly and severally, for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as allowed by law and that this Court deems just and proper.

## COUNT II – DISPARATE TREATMENT AND DENIAL OF REASONABLE ACCOMODATION

81. Plaintiff incorporates the allegations contained in the above-stated paragraphs as though fully set forth herein.

82. Plaintiff has a disability as defined by the ADA.

83. Defendants perceived Plaintiff to have a disability as defined by the ADA.

84. Plaintiff is a qualified individual as defined by the ADA, due to his disability and/or Defendants' perception that Plaintiff is disabled.

85. Plaintiff could perform the essential functions of his job duties for Defendants with or without reasonable accommodation.

86. Defendant failed to accommodate Plaintiff, despite such accommodations being available.

87. During Plaintiff's employment with Defendants, Plaintiff was subjected to different terms and conditions of employment, based on his disability and/or his perceived disability.

88. During Plaintiff's employment with Defendants, Plaintiff was subjected to an ongoing practice and/or pattern of discrimination/disparate treatment based on his disability and/or his perceived disability.

89. Plaintiff was subjected to different work requirements than other similarly situated employees in regard to the terms and conditions of his employment because of his disability and/or his perceived disability.

90. Plaintiff was subjected to different requirements for receiving a promotion than other similarly situated employees because of his disability and/or his perceived disability.

91. Plaintiff's disability and/or his perceived disability was a motivating factor in Defendants' decision not to promote Plaintiff.

92. Plaintiff's disability and/or his perceived disability was a motivating factor in Defendants' decision to constructively discharge Plaintiff.

93. Defendants' actions and/or omissions constitute a pattern or practice of discriminatory behavior.

94. All actions or inactions of or by Defendants occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

95. Defendants' actions constitute unlawful employment discrimination against Plaintiff in violation of the ADA, as alleged herein.

96. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants, jointly and severally, for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as allowed by law and that this Court deems just and proper.

## COUNT III – RETALIATION
## IN VIOLATION OF TITLE VII

97. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

98. Plaintiff is a member of a protected class because of his race, African American.

11

99. Plaintiff engaged in protected activity under Title VII. Defendants took adverse actions against Plaintiff as a result of his engaging in the aforementioned protected activity.

100. As a direct and proximate result of the unlawful conduct of Defendants as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

101. By failing to take prompt and effective remedial action, Defendants, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendants, jointly and severally, for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as allowed by law and that this Court deems just and proper

## COUNT IV
## INTERFERENCE / RESTRAINT IN VIOLATION OF THE FMLA

102. Plaintiff hereby incorporates by reference as if fully stated herein the allegations contained in the foregoing paragraphs.

103. Defendant is an employer under the FMLA.

104. Plaintiff was eligible to take FMLA leave, and the leave he took was qualifying FMLA leave.

105. Defendant unlawfully and intentionally discriminated against Plaintiff based on his exercising or attempting to exercise his rights under the FMLA when they failed to promote him and caused him to be constructively discharged.

106. Defendant's actions against Plaintiff were willful.

107. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

108. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendant and award Plaintiff damages as proven at trial, including front pay, back pay, and liquidated damages, for equitable relief, for attorneys' fees and related litigation and enforcement expenses and such other and further relief as allowed by law and that this Court deems just and proper.

## Demand for Jury Trial and Request for Place of Trial

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all counts and allegations of wrongful conduct alleged in this Complaint, and all other matters arising therefrom. Pursuant to D. Kan. Rule 40.2(a), Plaintiff requests the trial be held in Kansas City, Kansas.

Respectfully Submitted,

EDELMAN, LIESEN & MYERS, L.L.P.

/s/Sarah. C. Liesen _____
Sarah C. Liesen        KS #26988
208 W. Linwood Blvd.
Kansas City, Missouri 64110
Telephone: (816) 301-4056
Facsimile: (816) 463-8449
sliesen@elmlawkc.com
ATTORNEY FOR PLAINTIFF